[No. B235931. Second Dist., Div. Three. Aug. 1, 2012.]

ALAN WEINSTEIN et al., Plaintiffs and Appellants, v.
JUAN ROCHA, Defendant and Respondent.

COUNSEL

DiJulio Law Group, R. David DiJulio, Michael M. Bergfeld and Ken W. Choi for Plaintiffs and Appellants.

Dominguez Law Group, Aimee Dominguez and Stephen A. Bruce for Defendant and Respondent.

OPINION

CROSKEY, J.—Appellants Alan and Dorina Weinstein (the Weinsteins), purchasers of real property, appeal from an order enforcing a settlement agreement between them and the seller, respondent Juan Rocha.

The property's purchase was partially financed by a promissory note in favor of Rocha, secured by a second trust deed. The primary financing was supplied by the holder of the senior first trust deed. Rocha and the Weinsteins later entered into a settlement agreement to dismiss the Weinsteins' action against Rocha for alleged failed disclosures concerning the sale. The agreement altered the provisions of the promissory note by, inter alia, lowering the amount of the debt.

The Weinsteins later stopped paying on Rocha's note, and he obtained a judgment against them for the note's entire balance. The Weinsteins assert that the antideficiency statute (Code Civ. Proc., § 580b) should have limited Rocha's relief to foreclosing the promissory note's security.

We hold that, as the settlement agreement effected a modification of the promissory note, Rocha's right to recover on the secondary lien was limited by the antideficiency statute. We therefore reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2006, Alan and Dorina Weinstein purchased a multiunit property from Juan Rocha for a total of $1,265,000. The Weinsteins financed the purchase through a cash payment of $200,000, a note of $820,000 secured by a first deed of trust in favor of En Financial, and a note for $245,000 secured by a second deed of trust in favor of Rocha (the Promissory Note). This last amount was altered before closing to $209,418.

On August 20, 2008, the Weinsteins sued Rocha for allegedly not disclosing that the property violated certain provisions of the Los Angeles Municipal

Code (housing code) at the time of sale.[1] Rocha resolved the Weinsteins' action by means of a settlement agreement (the Settlement Agreement) executed on February 18, 2009.

Instead of Rocha paying the Weinsteins an amount to compensate them for the undisclosed housing code violations, the parties agreed to reduce the Weinsteins' obligation to Rocha. However, if the Weinsteins did not timely make payments on the reduced Promissory Note amount, the amount due would be increased to nearly the original amount and Rocha could foreclose on the property. The Settlement Agreement provided that (1) "the principal amount on the Promissory Note effective as of the date of this Agreement shall be amended to be $150,000," (2) the "term of the Promissory Note" would be extended from July 3, 2009, to July 3, 2012, (3) the monthly payments would be interest-only payments of $1,000, and (4) upon the Weinsteins' failure to make timely payments, Rocha reserved "the right to accelerate payment of the amount of $200,000 plus accrued but unpaid interest due on the Promissory Note and foreclose on the Property." The Settlement Agreement provided that the trial court had jurisdiction to enforce its terms.

The Weinsteins ultimately defaulted on both notes. In October 2010, En Financial sold the property in a foreclosure sale due to the Weinsteins' default. The Weinsteins had also ceased payments on Rocha's note in November 2009, and on December 16, 2010, Rocha gave the Weinsteins a 10-day notice that he was accelerating payment as per the Settlement Agreement. The Weinsteins did not pay Rocha any of the outstanding amount, and on April 8, 2011, Rocha moved to enforce the Settlement Agreement under Code of Civil Procedure section 664.6.[2] Rocha sought the full amount of the principal under the acceleration provision ($200,000), the unpaid interest payments ($14,000), and attorney fees. The Weinsteins opposed the motion, asserting that section 580b precluded Rocha from recovering a deficiency judgment against them and limited his remedy to the Promissory Note's security (which had already been exhausted by the foreclosure by the holder of the first trust deed, En Financial). The Weinsteins further argued that Rocha could not enforce the Settlement Agreement as a way of circumventing section 580b, because the Settlement Agreement only altered the Promissory Note and did not create a new avenue of recovery.

The trial court, however, held that the Settlement Agreement was equivalent to a judgment providing for payment of $200,000 to Rocha in the event

---

[1] The Weinsteins also sued the real estate agency and broker involved in the transaction and obtained a default judgment against them. Neither the agency nor the broker is a party to this appeal.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

the Weinsteins defaulted on the Promissory Note, and entered a judgment in favor of Rocha for $215,615 (principal amount, unpaid interest, and attorney fees). The Weinsteins appealed from this judgment.

## CONTENTIONS ON APPEAL

Rocha contends that the Settlement Agreement is an independently enforceable contract that does not fall within the proscription of section 580b. The Weinsteins contend that the Settlement Agreement merely modified the already existing obligations owed under the Promissory Note and is not independently enforceable. They also contend that section 580b bars Rocha from any relief other than a foreclosure on the Promissory Note's security. We conclude that the Settlement Agreement is inextricably tied to the Promissory Note, and was a modification of the terms of the Note. It did not create a separately enforceable independent obligation for the Weinsteins to pay Rocha $200,000.

## DISCUSSION

### 1. Standard of Review

The standard of review for an order enforcing a settlement agreement under section 664.6 is de novo. (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 35–36 [126 Cal.Rptr.2d 400].)

"If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . for settlement of the case . . . , the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6.)

### 2. Section 580b Applies to the Promissory Note

■ "No deficiency judgment shall lie in any event after a sale of real property . . . under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . ." (§ 580b.) Section 580b was "drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price." (*Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 41 [27 Cal.Rptr. 873, 378 P.2d 97].) It also acts as a "stabilizing factor in land sales" and "prevents the aggravation of [a] downturn that would result if defaulting

purchasers were burdened with large personal liability." (*Id.* at p. 42.) The purpose of the statute causes it to be applied liberally and broadly. (*DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 663 [85 Cal.Rptr.2d 292, 976 P.2d 843].)

Section 580b applies to the Promissory Note because Rocha retained an interest in the property being sold with the ability to foreclose on it upon nonpayment by the Weinsteins—albeit with lower priority than the first deed of trust. Because the property being purchased was used as security, this clearly falls within the definition of a "deed of trust . . . given to the vendor to secure payment of the balance of the purchase price" to which section 580b applies.

"[I]n *no event* shall there be a deficiency judgment, . . . because the security has become valueless or is exhausted . . . after a sale under [a senior] trust deed." (*Brown v. Jensen* (1953) 41 Cal.2d 193, 198 [259 P.2d 425].) In *Brown*, a property vendor who held a secondary deed of trust was denied relief outside of foreclosure even though the security had already been exhausted. One who issues a trust deed "assumes the risk that it may become inadequate." (*Id.* at p. 197.) This is especially true "where he takes . . . a second trust deed." (*Ibid.*)

Here, the fact that a previous sale exhausted the security of the Promissory Note makes section 580b applicable. In this case, like in *Brown*, the holder of the first trust deed exhausted the security in a foreclosure sale. The statute places the risk of the devaluation or exhaustion of the security on Rocha, because he "[took] . . . a second trust deed." In short, section 580b applies to the Promissory Note because the transaction is a seller-financed transaction, and the security was exhausted by a senior foreclosure sale.

### 3. *The Parties Intended the Settlement Agreement to Modify the Promissory Note*

Rocha argues, however, that section 580b is inapplicable because he did not obtain a deficiency judgment on the Promissory Note, but a judgment enforcing the independent Settlement Agreement. We therefore consider the language of the Settlement Agreement.

" 'A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone.' " (*Fire Ins. Exchange v. Hammond* (2000) 83 Cal.App.4th 313, 321 [99 Cal.Rptr.2d 596].)

The Settlement Agreement, to which the parties physically attached the Promissory Note, explicitly modified the terms of the Promissory Note five

times as follows: (1) it reduced the amount of money to be paid under the Promissory Note; (2) it reiterated that "the principal amount on the Promissory Note effective as of the date of this Agreement shall be amended to be $150,000"; (3) it extended the date on which the principal was due; (4) it modified the interest-only payments; and (5) it also provided that Rocha retained the right to accelerate payment (of a $200,000 balance) if the Weinsteins "fail[ed] to timely pay the interest on the Promissory Note." These modifications of obligations already owed by the Weinsteins were given as consideration for their dismissing the action against Rocha regarding his alleged failure to disclose the property's undisclosed housing code violations.

The reservation of a right that had already existed prior to the Settlement Agreement demonstrates that no new obligations were created by the Settlement Agreement; instead the Settlement Agreement was simply a restatement and alteration of the obligations already owed by the parties under the Promissory Note.[3]

Rocha argues that the Promissory Note merged into the Settlement Agreement because, Rocha asserts, the Settlement Agreement is the equivalent of a judgment. (*Epstein v. DeDomenico* (1990) 224 Cal.App.3d 1243 [274 Cal.Rptr. 521].) It is, however, a judgment for the modification of the Promissory Note, not a judgment for the payment of money. Moreover, although the Settlement Agreement was a modification of some of the terms of the Promissory Note, it did not change the nature of the note—a seller-financed note secured by a deed of trust.

The Settlement Agreement was created for the dual purposes of dismissing the lawsuit against Rocha and salvaging the Weinsteins' investment in a building that, unbeknownst to them, allegedly had numerous but undisclosed housing code violations when Rocha sold it to them. Rather than requiring a monetary payment from Rocha to the Weinsteins for the dismissal of their suit, the parties agreed to reduce the cost of the building that the Weinsteins had purchased. This simply modified the terms of the Promissory Note that already existed.

■ Because the Settlement Agreement was an explicit modification of obligations already owed under the Promissory Note and because of the policy reasons for interpreting section 580b broadly, Rocha's remedy is limited to foreclosure of the Promissory Note's security. As the security has

---

[3] Rocha's notice to the Weinsteins of the payment acceleration states that the Weinsteins "failed to pay the interest on the Promissory Note," not the Settlement Agreement. This confirms that Rocha understood the payments were to be made under the Promissory Note rather than the Settlement Agreement.

been exhausted for the foreclosure of a senior lien, Rocha has no further remedy against the Weinsteins, and the trial court erred in entering judgment in his favor.

## DISPOSITION

The judgment of the trial court is reversed. The Weinsteins shall recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 31, 2012, S205340.